Filed 11/5/24  P. v. Clark CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C099592 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-191843) |
| v. | |
| BRANDON ALLAN CLARK, | |
| Defendant and Appellant. | |

A jury found defendant Brandon Allan Clark guilty of inflicting corporal injury on a current or former dating partner and two drug offenses.  Defendant appeals, arguing the corporal injury conviction lacked sufficient evidence to support a finding he was in a dating relationship with the victim.  He also argues the prosecution committed prosecutorial error during closing argument by framing his relationship with the victim as " 'on and off' " despite defense counsel's failure to make a timely objection.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2023, defendant and Taylor R. spent the night together at a hotel.  They had sex, watched television, ate snacks, and drank alcohol.  The next morning, defendant

1

ate psilocybin mushrooms and acted violently towards Taylor. Taylor attempted but failed to call defendant's mother for help. Defendant attempted to take Taylor's phone and a scuffle ensued. Defendant then grabbed Taylor's purse from her shoulder, ran down the hallway outside of the hotel room, and stiff-armed her face when she chased him. Taylor eventually escaped by car to a nearby gas station, speaking with a 911 dispatcher on the way. During her conversation with the dispatcher, Taylor referred to defendant as her "boyfriend."

At the gas station, Roseville Police Officer Rosa Valdez arrived and noticed redness on Taylor's chest, scratches on her arms and wrists, and dried blood on her earlobe. Taylor told Officer Valdez that she and defendant had a "weird relationship," and that defendant was not her "boyfriend" but they had an "intimate relationship."

At trial, Officer Valdez testified that defendant and Taylor met on a "dating app" and were together "on and off." On cross-examination, Officer Valdez acknowledged that she did not ask Taylor to elaborate on what she meant by a "weird relationship."

Taylor testified that while in college, she and defendant met on a social connection platform and continued to stay in touch and meet occasionally over the following 10 years. During these meetings, defendant and Taylor would usually, but not always, have sex. Taylor testified that over 10 years, she and defendant had sex "maybe ten times." In addition to having sex, Taylor and defendant would meet at defendant's apartment or hotels and catch up on life. They would also speak on the phone and exchange text messages between in-person meetings. Taylor insisted that she and defendant were not dating but were only friends.

Taylor explained that she did not see defendant at all in 2021, saw him once in 2022, and saw him twice in 2023. Taylor also explained that she "enjoyed [defendant's] company" but wanted to keep their relationship "separate from [her] life." She only met defendant's mother once, never met any of his other family or friends, and had

2

relationships with other people, including buying a home with someone else whom she had dated for four years.

Taylor testified that throughout 2023, she and defendant texted and talked on the phone once every week or two weeks. The day after the incident, defendant called Taylor. During the call, defendant explained that he did not have a girlfriend and that he "never want[ed] to lose [Taylor]." When asked about her contact with defendant after the incident, Taylor initially testified she spoke to defendant two or three times before trial. When impeached by her phone records and calls made to another phone number, Taylor admitted defendant called her 20 times and she had spoken to him six to eight times before trial. Taylor also acknowledged that during those calls, defendant explained how important the status of their relationship was to the outcome of the case, and that she did not want defendant to be in trouble.

The jury found defendant guilty of corporal injury to a current or former dating partner, as well as two drug offenses. The trial court sentenced defendant to the midterm of three years in prison for the corporal injury offense. The trial court further imposed a six-month term for each of defendant's drug convictions to be served concurrent to his corporal injury sentence.

Defendant appeals.

## DISCUSSION

### I

### *Sufficient Evidence Supports A Dating Relationship*

Defendant argues there was insufficient evidence for the jury to find he and Taylor were in a dating relationship as required by Penal Code[1] section 273.5, subdivision (a). We disagree.

---

[1] Further undesignated section references are to the Penal Code.

In reviewing a claim for sufficiency of the evidence we determine " ' " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] We examine the record to determine 'whether it shows evidence that is reasonable, credible and of solid value from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] '[T]he appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*People v. Flinner* (2020) 10 Cal.5th 686, 748.) "[R]eversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citations.] '[A] reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Murphy* (2022) 80 Cal.App.5th 713, 725.)

Section 273.5 provides that "[a]ny person who willfully inflicts corporal injury resulting in a traumatic condition upon a victim" whom "the offender has, or previously had, a[] . . . dating relationship" is guilty of a felony. (§ 273.5, subds. (a), (b)(3).) Section 243, subdivision (f)(10) defines a dating relationship as "frequent, intimate associations primarily characterized by the expectation of affectional or sexual involvement independent of financial considerations." This definition applies to a "range of dating relationships." (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1116.) The statute does not define "frequent, intimate associations" or "affectional" involvement. (§ 243; see *Rucker*, at p. 1116.) But case law has established " '[s]erious courtship,' an 'increasingly exclusive interest,' 'shared expectation of growth,' or that the relationship endures for a length of time" is not required by the statute. (*Rucker*, at p. 1116.) And " 'a casual relationship or an ordinary fraternization between . . . individuals in a business or social context' " is not a dating relationship under section 243. (*Rucker*, at p. 1117.) "Whether such a dating relationship exists is inherently a fact-intensive inquiry, not

susceptible to resolution based on shorthand labels or descriptors." (*M.A. v. B.F.* (2024) 99 Cal.App.5th 559, 562 (*M.A.*).)

Defendant contends his relationship with Taylor was "nothing more than casual" and therefore falls outside of the relationships contemplated by the Legislature in enacting section 273.5. To support this contention, defendant likens the facts of this case to those of *M.A.* In *M.A.*, a case involving a tort action for domestic violence, the Fourth District Court of Appeal affirmed the trial court's finding that the defendant and the plaintiff were not in a dating relationship under section 243, subdivision (f)(10). (*M.A.*, *supra*, 99 Cal.App.5th at pp. 562, 569, fn. 4, 577.) There, the parties began a sexual relationship that spanned roughly two years. (*Id.* at pp. 563, 566.) During their relationship, they regularly exchanged messages and met in person a total of eight times. (*Id.* at pp. 563, 571.) The plaintiff referred to her relationship with the defendant as a " 'friends with benefits' " arrangement in her discussions with a psychologist. (*Id.* at p. 567.) At some point in the relationship, the plaintiff and the defendant did not see each other for 11 months, during which time the plaintiff had sex with another person but kept in contact with the defendant. (*Id.* at p. 564.) After this 11-month hiatus, the parties met and had sex. (*Ibid.*) On the way to their second meeting five days later, the defendant pulled the plaintiff's hair causing injury. (*Id.* at p. 565.)

*M.A.* is of no use to defendant. "When we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts." (*People v. Thomas* (1992) 2 Cal.4th 489, 516.) And, as the *M.A.* court noted, its "holding does not mean another trier of fact could not find that parties in a 'friends with benefits' relationship were in a dating relationship for purposes of the domestic violence statutes. Given our society's evolving understanding of personal relationships, it is virtually impossible to craft a bright-line test to definitively identify a relationship that is—or is not—a dating relationship." (*M.A.*, *supra*, 99 Cal.App.5th at pp. 576-577, fn. omitted.) Finally, even if the evidence in defendant's

5

case could be interpreted to substantiate facts identical to the facts of *M.A.*, defendant must show the evidence could not be interpreted in another way that supports a factual finding of a dating relationship. (See *People v. Murphy*, *supra*, 80 Cal.App.5th at p. 725 [holding that reversal is unwarranted simply because evidence might "reasonably be reconciled with a contrary finding"].) Here, defendant has not made such a showing. The court's finding in *M.A.* therefore does not preclude the jury's finding here.

Indeed, defendant and Taylor were engaged in an intermittent but consistent sexual relationship over the course of 10 years and had sex at the hotel before the incident. The jury could reasonably infer the affectionate nature of their relationship based on the long-standing practice of Taylor meeting up with defendant when she was in town and the fact the two met to catch up on life as well as to have sex. Further, the two remained in contact between meetings and carried on a relationship outside the business and social context. (See *People v. Rucker*, *supra*, 126 Cal.App.4th at p. 1116.) This is in contrast to the parties in *M.A.*, whose relationship status was much more inconsistent and took place over a shorter amount of time. (*M.A.*, *supra*, 99 Cal.App.5th at p. 571.)

Further, Taylor's attempts to help defendant during his hallucinations show she saw him as more than a casual acquaintance, but instead as someone she needed to care for. Taylor stayed with defendant and tried to calm him, paid for an additional night at the hotel, and called his mother before fleeing. She admitted at trial that she did not want defendant to get into trouble, and defendant explained in a phone conversation with Taylor that he did not want to lose her. The level of affection between defendant and Taylor as demonstrated by their consistent contacts, as well as their sexual relationship, provides sufficient evidence of the frequency required for a dating relationship within the meaning of section 243, subdivision (f)(10).

## II

### *Defendant's Claim Of Prosecutorial Error Is Forfeited*

Defendant argues the prosecution's framing of his relationship with Taylor as being on and off during closing argument constituted prosecutorial error and mandates reversal of the jury's verdict. Acknowledging his counsel did not object, defendant further argues that defense counsel's failure to object to the prosecution's framing did not result in forfeiture of the issue because an objection would have been futile. We disagree.[2]

" '[T]o preserve a claim of prosecutorial [error] for appeal, " ' "a criminal defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety." ' [Citation.] The lack of a timely objection and request for admonition will be excused only if either would have been futile or if an admonition would not have cured the harm." ' " (*People v. Lima* (2022) 80 Cal.App.5th 468, 478.)

Defendant argues an objection would have been futile because it "would have run afoul of the pretrial ruling" barring speaking objections and "disrupted the proceedings[] with little likelihood of success." Not so. During motions in limine, the trial court explained that attorneys must first state the evidentiary basis for the objection, and arguments supporting the objection would be made outside the presence of the jury. Nothing about this ruling would affect the viability of an objection. Defense counsel

---

[2] Defendant also contends Officer Valdez's testimony created implicit bias in the jury regarding what constitutes a dating relationship. Defendant does not cite to any authority demonstrating he is entitled to reversal on this ground, and therefore the issue is forfeited. (*Martine v. Heavenly Valley Limited Partnership* (2018) 27 Cal.App.5th 715, 728.) Regardless, defense counsel impeached Officer Valdez after she made the claim that Taylor characterized the relationship as on and off. Defendant acknowledges on appeal that Officer Valdez's misstatement was corrected by defense counsel in the presence of the jury. Therefore, defendant cannot show prejudice resulting from the alleged error because Officer Valdez's testimony was corrected.

could have objected to the use of the phrase on and off to describe the relationship between Taylor and defendant without running afoul of the pretrial ruling and then asked to be heard outside the presence of the jury.  Instead, what it appears defense counsel did was make a tactical decision to let the prosecution make its argument then contend that the relationship was not on and off during his own closing argument.

Because the record does not suggest defense counsel's objection would have been futile, defendant forfeited the issue of prosecutorial error on appeal.

DISPOSITION

The judgment is affirmed.


/s/_____
ROBIE, Acting P. J.



We concur:



/s/_____
MESIWALA, J.



/s/_____
WISEMAN, J.*

_____

*        Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.